UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ORLANDO R. MONTOYA, both individually
and as General Partner on behalf of ALTURA
APARTMENTS LIMITED PARTNERSHIP
and MONDEL APARTMENTS LIMITED
PARTNERSHIP,

      Plaintiffs,

v.                        Civ. No. 13-0689 MV/WPL

KELLEE A. VALNES, JAY S. WALGRAVE,
ALTURA PARTNERS, LLC and MONDEL
PARTNERS, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand to State Court for Lack of Subject Matter Jurisdiction ("Motion to Remand"), filed August 23, 2013 [Doc. 31]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Remand is well taken in part and will be granted in part.

## BACKGROUND

On July 8, 2013, Orlando Montoya, individually and as general partner on behalf of Altera Apartments Limited Partnership and Mondel Apartments Limited Partnership ("Plaintiffs"), commenced this action in the Thirteenth Judicial District Court, State of New Mexico, County of Valencia, alleging claims against Defendants Kellee Valnes, Jay Walgrave, Altura Partners, LLC, and Mondel Partners, LLC ("Defendants") for breach of contract, negligent and intentional misrepresentation, slander of title, and intentional interference with contract. [Doc. 1-2; *id.* ¶¶

1

51-54]. Defendants removed this case on July 25, 2013, claiming that the Court exercises original federal question jurisdiction over this action pursuant to 28 U.S.C. Section 1331. [Doc. 1 at 1].

The complaint alleges that in 1986, Plaintiff Montoya, along with founding partners Elwood Harder, David J. Reitter, and Defendant D.D. Walgrave, formed two limited partnerships—Altura Apartments Limited Partnership and Mondel Apartments Limited Partnership—for the purpose of developing two federally-subsidized apartment complexes. [Doc. 1-2 ¶ 10]. The partnership agreements, which are attached to the complaint, indicate that the original four founders each owned a 25 percent interest in the limited partnerships. [*Id.* ¶ 11].

The partnership agreements vest general management, control, and conduct for each business solely in one general partner: Plaintiff Montoya. [*Id.* ¶ 12]. The agreements identify the remaining founders as limited partners. The partnership agreements further provide that no new general partner can be admitted and no general partner can retire from, voluntarily withdraw, or be substituted without the prior consent of the Farmers Home Association, *i.e.*, the precursor to the United States Department of Agriculture Rural Development ("USDA RD"). [*Id.* ¶ 15]. The partnership agreements also indicate that the limited partners have no authority to participate in the management of the partnership business and that they have no authority to assign, transfer, or convey all or part of their partnership interests without the written consent of the general partner and without giving the other limited partners a right of first refusal. [*Id.* ¶¶ 13, 14].

The complaint alleges that, in 1988 and 1990, the original partners filed amended certificates of the limited partnerships, which made no substantive changes to the terms of the limited partnership agreements or to the designated general partner, but rather only reduced Walgrave's ownership interests in each of the limited partnerships to five percent, and granted Defendant Kellee Valnes a ten percent limited partnership interest in the Mondel Apartments

Limited Partnership.  [*Id.* ¶¶ 17, 18, 19].

The complaint further alleges that, on or around January 2001, Defendants, without the consent or knowledge of Plaintiff Montoya, and in violation of the partnership agreements, organized two New Mexico limited liability companies, Defendants Altura Partners, LLC and Mondel Partners, LLC, and that Walgrave transferred his five percent interest Altura Apartments Limited Partnership to Altura Partners, LLC, and his five percent interest in the Mondel Apartments Limited Partnership to Mondel Partners, LLC.  [*Id.* ¶ 21].  Altura Partners, LLC then became the general partner for Altura Apartments Limited Partnership and Mondel Partners, LLC became the general partner to Mondel Apartments Limited Partnership.  [*Id.*].  The complaint alleges that Walgrave also filed amended certificates of limited partnership for each limited partnership indicating that Plaintiff Montoya had been removed for cause as general partner, that Montoya's general partnership interest had been converted into a limited partnership interest, and that each aforementioned limited liability company had become the new general partner for its respective limited partnership.  [*Id.* ¶ 22].  The complaint alleges that Defendants failed to obtain prior approval from the USDA RD, as required by the limited partnership agreements, before filing the 2001 amended certificates of limited partnership.  [*Id.* ¶ 27].  The complaint further alleges that Defendants' actions in 2001 were invalid and contrary to the limited partnership agreements and the New Mexico Uniform Limited Partnership Act of 1986.  [*Id.* ¶¶ 24, 25].

The complaint alleges that Defendant Walgrave thereafter began asserting himself as general partner for both partnerships, [*id.* ¶ 28], and that Defendant Valnes also began acting as general partner and claiming that the limited liability companies, through Walgrave, gave her power of attorney to act as general partner for both limited partnerships, [*id.* ¶¶ 28, 29].  The complaint alleges that Plaintiff Montoya has continued to serve as general partner for both limited

partnerships up until and including the year 2013, and that Plaintiff Montoya has executed all his duties as general partner, including filing and signing the limited partnerships' 2012 tax returns. [*Id.* ¶ 31].

The complaint asserts that, in February 2013, Defendants Walgrave and Valnes obtained approval from the USDA RD for substitution of Plaintiff Montoya as general partner, [*id.* ¶ 32], that Defendants have assumed sole possession and control of the business and assets for both limited partnerships, and that Defendants have acted as the limited partnerships' general partners. [*Id.* ¶ 35, 36]. Defendants have failed to make any accounting to Plaintiff Montoya for their actions or otherwise to provide Plaintiff Montoya with their basis of his removal in 2001. [*Id.* ¶¶ 36, 38]. Defendants also have failed to expel Plaintiff Montoya as general partner pursuant to the terms of the limited partnership agreements and New Mexico law. [*Id.* ¶ 38].

Plaintiffs allege that an actual controversy has arisen and now exists between the parties regarding who is general partner of the limited partnerships and that Plaintiffs desire a judicial declaration of Montoya's rights as general partner of the limited partnerships. [*Id.* ¶¶ 45, 46, 47, 48]. Plaintiffs also seek an injunction enjoining Defendants from acting as general partners for the limited partnerships, [*id.* ¶ 49], as well as damages and disbursements for Plaintiff Montoya's services as a general partner, [*id.* ¶ 55].

On July 25, 2013, Defendants filed a notice of removal. [Doc. 1]. In their notice, Defendants claim that removal is proper because the Court has original federal question jurisdiction over the action pursuant to 28 U.S.C. Section 1331. [*Id.* at 1]. Defendants represent in their notice that under Title V of the Housing Act of 1949, the USDA RD has implemented a loan program—referred to as the Section 515 Rural Rental Housing Program—by which the agency issues federal loans for housing developments, and that the limited partnerships at issue

here were organized pursuant to the Section 515 Program.  [*Id.* at 2].  Defendants maintain that Title V of the Housing Act of 1949 authorized the USDA RD to promulgate a comprehensive regulatory scheme to implement the Section 515 Rural Rental Housing Program, that these regulations require borrowers like the limited partnerships to receive USDA RD approval for actions regarding ownership and management of participating companies, and that USDA RD approval is required for any change in structure in the ownership entity, including substitution of the general partner.  [*Id.*].

Defendants characterize the complaint as "seek[ing] to challenge [the] February 2013 determination by the USDA RD" authorizing the substitution of Plaintiff Montoya as the general partner of Altura Apartments Limited Partnership and Mondel Apartments Limited Partnership. [*Id.* at 3].  Defendants contend that the Federal Crop Insurance Report and Department of Agriculture Reorganization Act of 1994 [("Reorganization Act")], 7 U.S.C. § 6901 *et seq.*, governs appeals of USDA RD decisions relating to the Section 515 Rural Housing Rental Program, and argue that, because the complaint is in effect a challenge to the USDA RD's decision, it is subject to this Court's jurisdiction.  [Doc. 37 at 3].

## **STANDARD**

A defendant may remove a state civil action "to the district court of the United States for the district and division embracing the place where such action is pending" if the federal district court has original diversity of citizenship or federal question jurisdiction over the matter.  *See* 28 U.S.C. § 1441(a).  A notice of removal must be filed within "thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b).  The right to remove is purely statutory and thus is strictly construed.

*See Farmland Nat'l Beef Packing Co. v. Stone Container Corp.*, No. 04-3028, 2004 WL 830769, *3 (10th Cir. Apr. 16, 2004) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)); *Chavez v. Kincaid*, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998) (citations omitted). As the removing party, the defendant bears the burden of proving "all jurisdictional facts and of establishing a right to removal." *Id.* (citations omitted). Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand. *See id.* (citations omitted); *Shamrock*, 313 U.S. at 108-09; *see also Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) ("all doubts are to be resolved against removal").

If a defendant has removed a matter to federal court, the plaintiff may object to the removal by filing a motion to remand the case back to state court. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996). Lack of subject matter jurisdiction is one ground for remand. *See* 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"). A federal court remanding a removed case to state court for lack of subject-matter jurisdiction "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* § 1447(c).

## DISCUSSION

In their Motion to Remand, Plaintiffs challenge Defendants' contention that the Court exercises federal question jurisdiction over the claims pursuant to Section 1331 of Title 28. Plaintiffs maintain that their claims arise under state—and not federal—law, and that the Court therefore should remand the case. Plaintiffs also argue that they are entitled to attorney's fees.

I.  <u>Lack of Subject Matter Jurisdiction</u>.

Section 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. "A case arises under

federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks and citation omitted).

Defendants characterize the complaint as "seek[ing] to challenge a February 2013 determination by the USDA RD that [Montoya] is not general partner of Altura LP and Mondel LP," and contend that the Reorganization Act grants "federal district courts, pursuant to 28 U.S.C. § 1331, . . . exclusive jurisdiction to hear a challenge to an agency determination such as this one." [Doc. 1 at 3]. Although Defendants describe the complaint as challenging the USDA RD's decision to approve substitution of Plaintiff Montoya as general partner, Plaintiffs deny that they are bringing such a claim, and the complaint itself does not assert a cause of action based upon a challenge to the USDA RD's decision to approve the substitution. Rather, the complaint alleges only state law claims for breach of contract, negligent and intentional misrepresentation, slander of title, and intentional interference with contract. [Doc. 1-2 ¶¶ 51-54]. Plaintiffs, therefore, maintain—and the Court agrees—that the Court lacks subject matter jurisdiction over their complaint, because the claims alleged arise under state, and not federal, law.

The complaint does not establish that the Reorganization Act, or any other federal law, creates Plaintiffs' causes of action or that their right to relief necessarily depends on resolution of a substantial question of federal law. *Cf. Nicodemus*, 440 F.3d at 1232. Plaintiffs are the masters of their claims, and they may avoid federal jurisdiction by relying exclusively on state law. *Cf. Catepillar*, 482 U.S. at 392. This is precisely how Plaintiffs have drafted their complaint. The complaint seeks a determination that Defendants breached the partnership agreements, violated the New Mexico Uniform Limited Partnership Act, and committed torts in contravention of New

Mexico law, and not that the USDA RD erroneously approved the substitution of Montoya as general counsel. [Doc. 1-2, ¶¶ 51-54; Doc. 42 at 1-2]. Plaintiffs ask the Court to determine whether Defendants "had any legal basis or authority" under New Mexico law and the partnership agreements "to even request approval [from USDA RD] of the substitution," and explain that "[w]hen the Court rules on the legality of Defendants' actions in seeking approval of the substitution of general partner[, Plaintiff] can then seek [USDA] RD's approval for substitution back as general partner." [*Id.* at 1]. Plaintiffs' complaint, therefore, does not arise under federal law and the Court does not have federal question subject matter jurisdiction over this case. Accordingly, the Court grants Plaintiffs' Motion to Remand.

The Court is not persuaded to hold otherwise by Defendants' claim that the complaint is not "subject to state court adjudication because the parties structured their partnership agreement under the auspices of a complex federal regulatory scheme which . . . vests in USDA RD final decision-making power over fundamental corporate governance questions," and that this regulatory scheme is "elevate[d] above [the] state law that would otherwise regulate [the parties'] governance and fiduciary relationships." [Doc. 37 at 1-2]. Defendants rely upon the doctrine of complete preemption to support this claim. [*Id.* at 2, 6].

"The 'complete preemption' doctrine has been referred to as a corollary, or an exception, to the well[-]pleaded complaint rule." *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1204 (10th Cir. 2012) (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996)) (additional citations omitted). Unlike ordinary preemption, which is a federal defense to a state-law claim under the Supremacy Clause of the Constitution that does not render a state-law claim removable to federal court," *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011), complete preemption "substitutes a federal cause of action for the state

8

cause of action," 693 F.3d at 1205 (citation omitted). "'When the [complete-preemption] doctrine is properly invoked, a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim necessarily federal in character.'" *Id.* (quoting *Schmeling*, 97 F.3d at 1339).

Complete preemption is a "rare" and "extraordinary" doctrine. *Id.* (citations omitted). "The circumstances are so rare in fact that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act of 1947 . . ., § 502 of the Employee Retirement Income Security Act of 1974 . . . , and actions for usury against national banks under the National Bank Act." *Id.* at 1204-05 (citations omitted). "Consequently, the Supreme Court has warned that complete preemption should not be 'lightly implied.'" *Id.* at 1205 (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 752 (1983)) (additional citation omitted). "Further, for the complete-preemption doctrine to apply, the challenged claims must 'fall within the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area.'" *Id.* (quoting *Hansen*, 641 F.3d at 1221). "That is, the asserted federal statute must 'so pervasively regulate [its] respective area' that it leaves no room for state-law claims." *Id.* (quoting *Hansen*, 641 F.3d at 1221).

A claim of complete preemption demands a two-part analysis. A court must ask (1) whether the federal regulation at issue preempts the state law relied on by the plaintiff; and (2) whether Congress intended the federal cause of action to be exclusive. *See id.* The Tenth Circuit has cautioned that courts should begin their inquiry with the second prong, explaining that the interests of "comity and prudence" dictate that courts avoid addressing needlessly the first prong, which will frequently require a discussion of the merits of the preemption defense. *Id.* at 1206 (citing *Schmeling*, 97 F.3d at 1342).

The Court must first consider whether Congress created a federal cause of action that it intended be exclusive. *See id.* at 1205. In *Devon Energy Production Co. v. Mosaic Potash Carlsbad, Inc.*, an oil company brought an action seeking a declaratory judgment that (1) federal law completely preempted the plaintiff mining company's anticipated state-law claims emanating from the oil company's unauthorized drilling in an area managed by the U.S. Department of Interior's Bureau of Land Management ("BLM") and governed by rules promulgated under the Mineral Leasing Act of 1920 ("MLA"), and (2) the only remedies available to the mining company were derived from the federal administrative and judicial remedies of the Administrative Procedure Act ("APA"). *See id.* at 1198. In *Devon*, the oil company sought approval from BLM to drill the "Apache well" in a particular area; the BLM denied approval in that area but indicated that it would approve the well if located in a different area. *See id.* The oil company, however, mistakenly located the well in the area that the BLM did not approve, and the mining company alleged that the erroneous placement had wasted mineable potash and caused the mining company to incur damages. *See id.*

The Tenth Circuit rejected the oil company's argument that complete preemption applied and held that the "lack of a substitute federal remedy precluded [such a] finding." *Id.* at 1206. On appeal, the oil company conceded that Congress did not provide the mining company with a private remedy under the MLA, but argued that "'Congress . . . provided [it] with a private remedy of an appeal of the BLM's decision under 43 C.F.R. and the APA, which if [the mining company] had been successful in such an appeal might have resulted in the plugging and abandonment of the Apache Well.'" *Id.* (citing the oil company's brief). The Tenth Circuit found this argument unavailing.

The *Devon* court explained that the "availability of an administrative remedy *against the*

10

*BLM* ha[d] no bearing on whether the mining company's state law claims *against [the oil company]* ha[d] been completely supplanted by a private federal cause of action," because the mining company was "not challenging . . . any action or inaction by the BLM," but rather was "challenging [the oil company's] drilling of the well when it had no approval from the BLM to do so," *id.* at 1207 (internal quotation marks and citations omitted). "Thus, even if pursuing relief through the APA might ultimately have resulted in the Apache Well being plugged and abandoned, it would not have compensated [the mining company] for any damages stemming from [the oil company's] initial act of drilling at an unapproved well site." *Id.* Thus, the court concluded that complete preemption was unavailable. *See id.*

The Court here likewise concludes that the Reorganization Act does not provide Plaintiffs with a federal cause of action that would compensate Plaintiffs for damages stemming from Defendants' alleged actions of violating the partnership agreements and New Mexico law.[1] Admittedly, the facts of *Devon* differ, because there the BLM denied the oil company's proposed action and the oil company acted in contravention of that denial, whereas here the USDA RD approved the Defendants' action, but Defendants failed to obtain that approval prior to acting as required by the partnership agreements. The Court nonetheless finds the reasoning of *Devon* persuasive.

In *Devon*, as here, the complaining party was seeking damages arising from the alleged wrongdoer for acting without receiving agency approval for that action. Thus, in *Devon*, as here, the damages sought allegedly were caused by the wrongdoer's actions, and not by the agency's actions. As the *Devon* court explained, the mining company was not challenging the agency's

---

[1] The Court assumes, for purposes of deciding the motion to remand only, that Defendants properly characterize the Reorganization Act as providing Plaintiffs with the right to administrative review of the USDA RD's decision to approve the substitution of general counsel.

11

decision but rather the oil company's actions. *See id.* Likewise, Plaintiffs do not challenge the USDA RD's decision to approve Defendants' substitution of Montoya as general counsel, but rather Defendants' action to remove Montoya as general counsel without seeking prior approval from the USDA RD. Thus, as in *Devon*, the availability of an administrative remedy *against the USDA RD* has no bearing on whether Plaintiffs' state law claims *against the Defendants* have been completely supplanted by a private federal cause of action, because Plaintiffs were not challenging the USDA RD's action but rather the Defendants' actions in violation of the partnership agreements and New Mexico law. *Cf. id.* Thus, even if Plaintiffs pursued an administrative appeal of the USDA RD's approval of the substitution, this appeal would not have compensated Plaintiffs' for Defendants' actions. *Cf. id.* The Court therefore concludes that Congress did not intend a Reorganization Act appeal to supplant Plaintiffs' state causes of action for breach of the partnership agreements or violation of New Mexico law and that complete preemption therefore does not apply.

In so holding, the Court recognizes that the Tenth Circuit has held that complete symmetry of remedies is not necessary to support a finding of complete preemption. *See id.* ("We continue to observe that mirror-like symmetry between the federal and state remedies is not required to support a determination of complete preemption.") (citation omitted). The proper question is whether the federal remedy at issue "vindicate[s] the same basic right or interest that would otherwise be vindicated under state law." *Id.* (citations omitted). The plaintiff in *Devon*, for example, sought to assert state-law claims that related to a distinct interest: "namely, an interest in being free from harm from parties drilling without first obtaining the BLM's approval." *Id.* The *Devon* court held that "this interest is too far removed from the interest that would be vindicated by an APA proceeding— *viz.,* an interest in ensuring (insofar as it impacts the mining

12

company's potash mining) that the BLM properly manages the Potash Area, including well sites." *Id.* at 1206-07 (citation omitted).  Here, likewise, the Plaintiffs' interests in being free from an alleged breach of the terms of the partnership agreements or violation of New Mexico law is far removed from the Plaintiffs' interest that would be vindicated in a Reorganization Act appeal, namely, ensuring that the USDA RD properly manages Section 515 Rural Rental Housing Program loans to the extent those loans impact Plaintiffs.  Thus, Plaintiffs' state remedies and remedies under the Reorganization Act are not sufficiently similar to invoke complete preemption.

The Court's holding that Defendants have not satisfied the second prong of the complete preemption test is fatal to Defendants' complete preemption claim, and the Court therefore need not—and does not—decide whether Defendants have satisfied the first prong of the test, which requires a decision on the merits of the preemption defense.  The Court also notes that it declines to decide the first prong of the complete preemption test to avoid "the awkwardness of simultaneously (1) holding that [the Court] lack[s] jurisdiction and (2) commenting on the merits of the preemption defense."  *Schmeling*, 97 F.3d at 1343 (citation omitted).  The Court further seeks "to avoid the unseemly encroachment on the province of the state courts that would result from such a posture."  *Id.*[2]

The Court also is not persuaded to deny the Motion to Remand by Defendants' argument

---

[2]  Although the Court does not decide whether the first prong of the complete preemption test is satisfied, the Court notes that it doubts Defendants could establish that Plaintiffs' state law breach of contract and other claims fall within the scope of a federal statute intended by Congress completely to displace all state law on the issue of breach of contract and common law tort. Defendants maintain that the Reorganization Act requires administrative review of the agency's approval of a participating company's decision to change its management or ownership.  [Doc. 1 at 2].  The Court is doubtful that the limited scope of this regulatory control—the right to *approve* (but not make) a participating company's *management and ownership* (but not other) decisions—could evince a Congressional intent to displace all state law on the topic of breach of contract, partnership law, and tort law, and comprehensively regulate companies participating in the Section 515 Rural Rental Housing Program.  *Cf. Devon*, 693 F.3d at 1205.

that the artful pleading doctrine required Plaintiffs to plead a federal claim in their complaint. In attempt to identify a federal question, Defendants cite *Turgeau v. Administrative Review Board*, 446 F.3d 1052 (10th Cir. 2006), in which the Tenth Circuit held that "[u]nder the 'artful pleading' doctrine, . . . a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim," *id.* at 1060-61, and *Lafayette v. Cobb*, 385 F. Supp. 2d 1152 (D.N.M. 2004), in which the district court explained that "[a] corollary to the well-pleaded complaint rule" is the "artful pleading doctrine," which 'provides that a plaintiff cannot frustrate a defendant's right of removal by carefully pleading the case without reference to any federal law," *id.* at 1159. Defendants insist that the artful pleading doctrine prohibits Plaintiffs from frustrating their right to removal by failing to plead a challenge to the USDA RD's decision pursuant to the Reorganization Act in their complaint. Defendants contend that a challenge to the USDA RD's decision under the Reorganization Act is an "essential element[]" of Plaintiff's claims, and that the artful pleading doctrine therefore prohibits Plaintiffs from omitting this essential federal claim from their complaint. [*Id.*].

While Defendants accurately recite the law regarding the artful pleading doctrine, they have not demonstrated that the doctrine applies here. The artful pleading doctrine requires a plaintiff to plead a federal question only if it is essential to the plaintiff's claim. *See Turgeau*, 446 F.3d at 1060-61; *Lafayette*, 385 F. Supp. 2d. at 1159. Defendants have not established that a challenge to the USDA RD's decision under the Reorganization Act is essential to Plaintiffs' state law claims. The questions whether Defendants have breached their obligations under the limited partnership agreements and whether Defendants have committed the torts of intentional or negligent misrepresentation, slander of title, and intentional interference with contract are not dependent upon the propriety of the USDA RD's decision to approve the substitution of Plaintiff

Montoya as general partner. Rather, the questions raised in the complaint are independent from the USDA RD's administrative approval. Plaintiffs seek only a determination whether *Defendants'* properly sought prior approval from the USDA RD for the substitution of Plaintiff Montoya as general counsel and whether *Defendants'* actions otherwise violated New Mexico law. To answer these questions, the Court need not review the USDA RD's decision. Indeed, Plaintiffs allege that Defendants' wrongful acts occurred, and thus the Plaintiffs' causes of action arose, even prior to the USDA RD's decision to approve the substitution of Montoya as general counsel. Thus, the Court concludes that the USDA RD's decision was not an essential element of Plaintiffs' state law claims and that the artful pleading doctrine did not require Plaintiffs to plead a federal challenge to the USDA RD's decision in their complaint.

Defendants removed this case on the ground that the Court exercises federal question jurisdiction over the complaint pursuant to 28 U.S.C. Section 1331. Having concluded that the complaint does not allege any claims arising under federal law, and that the Court therefore does not have federal question subject matter jurisdiction over Plaintiffs' claims, the Court grants Plaintiffs' Motion to Remand.

II.     Attorney's Fees.

A federal court remanding a removed case to state court for lack of subject-matter jurisdiction "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court determined in *Martin v. Franklin Capital Corporation*, 546 U.S. 132 (2005), that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. Although it is a close call, the Court cannot

15

state unequivocally that Defendants had no objectively reasonable basis for seeking removal. Thus, the Court denies Plaintiffs' motion for attorneys' fees.

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that Plaintiffs' Motion to Remand to State Court for Lack of Subject Matter Jurisdiction, filed August 23, 2013 [Doc. 31], is hereby GRANTED IN PART as follows:  (1) the Court grants Plaintiffs' motion to remand; and (2) the Court denies Plaintiffs' motion for attorneys' fees.

Dated this 31st day of March, 2014.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE